UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GEOFFREY R. LAWSON, SR.,

                    Plaintiff,

        v.

BRENT CARNEY; JOSEPH LUCE;
MARK MURPHY; JODY SABATINO;
and PATRIC KNIE,

                    Defendants.

NO:  2:15-CV-184-RMP

ORDER ADOPTING REPORT AND
RECOMMENDATION AND
GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

        BEFORE THE COURT is United States Magistrate Judge Mary K. Dimke's

August 4, 2017, Report and Recommendation, ECF No. 127, to grant Defendants'

Motion for Summary Judgment, ECF No. 84, and to grant Defendant Sabatino's

Motion for Summary Judgment, ECF No. 87; Plaintiff's August 18, 2017,

Objections to the Report and Recommendation, ECF No. 129; Defendant Sabatino's

Response to Report and Recommendations, ECF No. 130; and Plaintiff's Reply to

Defendant Sabatino's Response, ECF No. 131.  The Court has considered all the

relevant documents in this case and is fully informed.

ADOPTING REPORT AND RECOMMENDATION ~ 1

# BACKGROUND

This is a 42 U.S.C. § 1983 action in which Plaintiff, pleading *pro se*, alleges violations of his rights protected by the First, Eighth, and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). ECF No. 8 at 5. Plaintiff, Geoffrey R. Lawson, has been in the custody of Washington Department of Correction (DOC) since March 21, 2013, and is currently incarcerated at Airway Heights Corrections Center (AHCC) in Airway Heights, Washington. ECF No. 8 at 6. Mr. Lawson alleges that Department of Corrections Chaplain Joseph Luce, Food Services Manager Mark Murphy, Dietary Services Manager Brent Carney, ARNP Jody Sabatino, and Assistant Supervisor Patric Knie (collectively Defendants) temporarily denied him a kosher diet and continue to deny him a soy-free diet. ECF No. 8 at 5.

Mr. Lawson is Jewish and follows the kosher tradition of the Jewish faith. ECF No. 8 at 6. Mr. Lawson began receiving the DOC religious kosher diet at AHCC on April 17, 2013. ECF No. 41, ¶ 16. The DOC religious kosher diet contains soy products and has contained kosher soy products since Mr. Lawson began receiving it in April 2013. ECF No. 41, ¶ 16.

In January 2015, DOC implemented a cold "breakfast boat" that included powdered soy milk. ECF No. 8 at 6-7. After the implementation of the "breakfast boat," Mr. Lawson complained of headache, nausea, and vomiting and saw Defendant Sabatino in the AHCC infirmary. ECF Nos. 8 & 43. Defendant Sabatino

found no objective symptoms supporting Mr. Lawson's subjective complaint and did not test Mr. Lawson for food allergies on February 2, 2015. EFC No. 43, ¶ 6; *see* ECF No. 41-3 (DOC Policy 610.240 requires health providers to test only for "main food allergies," *see infra*, and Mr. Lawson did not complain of either of the recognized main food allergies). On February 2, 2015, Defendant Sabatino issued a Health Status Report (HSR) directing that Mr. Lawson receive a special therapeutic diet containing no soy products. EFC No. 43, ¶ 6.

DOC Policy 610.240 provides guidelines regarding therapeutic diets. ECF No. 41-3. DOC Policy 610.240 distinguishes between therapeutic diets listed in the Therapeutic Diet Manual, ECF No. 41-3 at 6-10, and other therapeutic diets, which it classifies as Level II interventions that require authorization "per the Offender Health Plan." *Id.* DOC Policy 610.240 also distinguishes between "main food allergies" for which it provides testing, which are tomato and peanut allergies, and other food allergies. *Id.* DOC Policy 610.240 states that offender-controlled dietary conditions, including food allergies other than the recognized main food allergies, "will be treated through offender self-selection of the Mainline diet in order to achieve the desired goals." ECF No. 41-3 at 51. DOC Policy 610.240 "also provides offenders with nutritional supplements and/or a 'snack' when an offender needs to self-restrict foods on the menu that adversely impact their health resulting in weight loss." ECF No. 41, ¶ 13.

On February 9, 2015, Defendant Carney directed Defendant Sabatino to rescind the HSR ordering a special no-soy diet because DOC "does not offer such a diet," ECF No. 84 at 2, and DOC policy does not permit providing a soy-free diet without the medical provider following the correct procedural protocols. ECF No. 41, ¶ 22. Under DOC policy, a diet that accommodates a soy allergy qualifies as an unlisted therapeutic diet, a Level II intervention that requires authorization "per the Offender Health Plan." *See* ECF No. 41. Defendant Sabatino did not follow the required DOC protocols in issuing the "no soy" therapeutic diet on February 2, 2017, leading Defendant Carney to rescind the February 2, 2017 HSR. *Id.*, ¶ 22.

DOC Policy 560.200 states that "[i]f a therapeutic diet is recommended, that diet will take precedence over the religious diet." ECF No. 41-2 at 39. DOC Policy 560.200 also states "[i]f the offender does not refuse the therapeutic diet at th[e] time [that it is recommended], the diet will remain in effect until its expiration date, at which time the religious diet will resume." *Id.*

DOC's Offender Management Network Information (OMNI) system records an offender's diet preferences or assignments, and that information is encoded on each inmate's ID card. ECF No. 41, ¶ 23. Corrections officers scan each inmate's ID card as the inmate goes through the dining hall to get his/her meals. *Id.* DOC Policy 610.240 states that health care providers enter therapeutic diets into the Offender Management Network Information – Health Services (OMNI-HS) system. ECF No. 41-3 at 53. DOC Policy 560.200 states that the Chaplain/designee ensures

that the necessary procedures are completed to allow an offender to receive a religious diet. ECF No. 41-2 at 39.

Mr. Lawson alleges and Defendants concede that Plaintiff's kosher diet was suspended from April 12, 2015, to June 28, 2015. ECF No. 8 at 10; ECF No. 84 at 2. Mr. Lawson filed a grievance form dated April 24, 2015, seeking a soy-free kosher diet. ECF No. 8-1 at 2. The responding DOC official stated that "DOC does not recognize a 'no soy' diet," but did not address Mr. Lawson's request regarding the kosher diet. *Id.* Mr. Lawson filed a grievance form dated May 13, 2015, seeking immediate return to the kosher diet and seeking a list containing the ingredients of DOC meals that contain soy. *Id.* at 8. The responding DOC officials stated that the State does not offer a no soy option and again denied Mr. Lawson's request for a no-soy kosher diet. *Id.* The DOC response to Mr. Lawson's May 13, 2015, grievance did not directly address Mr. Lawson's specific request to return to a kosher diet. *See id.* DOC did not restore Mr. Lawson to the kosher diet until June 28, 2015. ECF No. 8 at 10; ECF No. 84 at 2.

Mr. Lawson submitted to two food allergy tests that both tested for soy allergy. ECF No. 127 at 11. The results from both tests were negative. *Id.* Mr. Lawson created a log describing the physical symptoms he experienced during the period from May 12, 2016, to June 19, 2016, as nausea, vomiting, stomach pain, diarrhea, headache, and throat pain. ECF No. 119 at 18-37. He attributed these symptoms to the soy products in the DOC kosher diet. *Id.* The only evidence that

Mr. Lawson has offered exhibiting weight loss as a result of his diet at AHCC dates to April and May of 2013, when Mr. Lawson sent two messages to Health Services stating that he was suffering "extreme weight loss."  ECF 62-4 at 2-3.

## PROCEDURAL HISTORY

Defendants Carney, Knie, Luce, and Murphy filed this Renewed Motion for Summary Judgment, *see* ECF No. 84, and Defendant Sabatino filed a separate Motion for Summary Judgment.  *See* ECF No. 87.  United States Magistrate Judge Mary K. Dimke issued a Report and Recommendation to Grant Defendants' Motion for Summary Judgment and to Grant Defendant Sabatino's Motion for Summary Judgment.  *See* ECF No. 127.

Following the Report and Recommendation, Mr. Lawson filed his objections. *See* ECF No. 129.  Mr. Lawson raises eleven objections: (1) that the Magistrate Judge improperly ruled on Defendants' motion for summary judgment; (2) that the Magistrate Judge issued improper orders regarding pretrial matters which must be reviewed by the Court; (3) that the Magistrate Judge improperly denied Mr. Lawson's motions for a preliminary injunction; (4) that the Report and Recommendation's statement of facts omits details of Mr. Lawson's allegations regarding the physical harm he suffered and unsatisfactorily describes Defendant Sabatino's examination of Mr. Lawson; (5) that the Report and Recommendation adopts Defendants' theory regarding Mr. Lawson's removal from the kosher diet; (6) that the Report and Recommendation recommends granting Defendants' Motions for

Summary Judgment with regard to Mr. Lawson's Religious Land Use and Institutionalized Persons Act (RLUIPA) claim; (7) that the Report and Recommendation recommends granting Defendants' Motions for Summary Judgment with regard to Mr. Lawson's First Amendment claim; (8) that the Report and Recommendation recommends granting Defendants' Motions for Summary Judgment with regard to Mr. Lawson's Eighth Amendment claim; (9) that the Report and Recommendation recommends granting Defendants' Motions for Summary Judgment with regard to Mr. Lawson's Fourteenth Amendment claim; (10) that the Report and Recommendation finds discovery sufficient; and (11) that the Magistrate Judge denied Mr. Lawson the opportunity to amend his complaint.

## DISCUSSION

### I. Legal Standard for District Court Review of Magistrate Judge's Report and Recommendation

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 18 U.S.C. § 636(b)(1). In considering the report and recommendation of a magistrate judge, the judge of the court has discretion "to give the magistrate's recommendation whatever weight the judge decides it merits." *Mathews v. Weber*, 423 U.S. 261, 275 (1976). However, the Court must reconsider *de novo* any part of the Magistrate Judge's Report and Recommendation that has been properly objected to and may accept, reject, or modify the recommended disposition. *Id.*; *see also* Fed. R. Civ. P. 72(b)(3). "A

proper objection under Rule 72(b) requires the prisoner to make 'specific written objections to the proposed findings and recommendations.'" *Berger v. Ryan*, 2011 U.S. Dist. LEXIS 99526, at *5 (D. Ariz. Sept. 2, 2011) (*citing* Fed. R. Civ. P. 72(b)(3)).

Mr. Lawson raised timely written objections specific to each finding of the Report and Recommendation. *See* ECF No. 129. Mr. Lawson objects to the magistrate judge's recommendation to grant each of Defendants' Motions for Summary Judgment with regard to each of the alleged constitutional and statutory violations alleged by Mr. Lawson. This Court accordingly considers *de novo* each of the dispositive recommendations of the Magistrate Judge.

## II. Legal Standard for Summary Judgment

A court may grant summary judgment where "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986); *see also* FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "sufficient evidence supports the claimed factual dispute, requiring 'a jury or judge to resolve the parties' differing version of the truth at trial.'" *Kirwin v. Teamsters Local Union No. 609*, 2012 WL 553988, at *1 (E.D. Wash. Feb. 21, 2012) (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). "A key purpose of summary judgment 'is to isolate and dispose of factually unsupported claims.'" *Id.* (citing *Celotex*, 477 U.S at 324).

The moving party bears the burden of showing the absence of a genuine issue of material fact or, in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Legal Standard for Deciding 42 U.S.C. § 1983 Claims**

To satisfy the legal standard required by 42 U.S.C. § 1983, a plaintiff must prove that two essential elements are present in his or her claim. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). First, the conduct complained of must be "committed by a person acting under color of state law." *Id.* Second, the plaintiff must show that the conduct complaint of deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or federal statutory law. *See id.*

Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 106 S.Ct. 662, 664 (1986). In a § 1983 suit, "the plaintiff must still prove a violation of the underlying constitutional right." *Id.*

Mr. Lawson alleges violations of his rights under the First, Eighth, and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons

Act (RLUIPA). ECF No. 8 at 5. The Report and Recommendation recommends granting Defendants' Motions for Summary Judgment as to all of Mr. Lawson's claims and denying any injunctive relief to Mr. Lawson. *See* ECF No. 127. Mr. Lawson objects to each of the magistrate judge's recommendations. *See* ECF No. 129.

### A. Soy Allergy Claims

In his § 1983 suit, Mr. Lawson alleges that Defendants violated RLUIPA and the Eighth Amendment by continuing to serve him meals containing soy ingredients. ECF No. 8 at 13-15. Mr. Lawson seeks damages and to enjoin Defendants from serving him meals that contain soy products. ECF No. 8 at 16-17. He asserts that he suffered and continues to suffer physical harms allegedly caused by the soy ingredients in the DOC Mainline and kosher diets. *See* ECF No. 129, at 6.

Whether Mr. Lawson has an allergy to soy products is a fact material to his claims for relief. Mr. Lawson has been eating the DOC kosher diet since 2013, and the DOC kosher diet has contained soy for the entire period of Mr. Lawson's incarceration at AHCC. ECF No. 41, ¶ 19. Mr. Lawson first reported he was experiencing negative physical reactions to soy products in January 2015, after the DOC implemented a new breakfast regimen that contained powdered soy milk. ECF No. 8 at 6-7. Mr. Lawson has undergone two allergy tests and neither test indicated that he is allergic to soy. ECF No. 127 at 32.

In support of his claims, Mr. Lawson submitted a log describing the physical symptoms he experienced while eating the kosher diet, including soy products, during a period from May to June of 2016. *See* ECF No. 119 at 18-37. He filed the declaration of a fellow inmate in which the inmate states that he observed Mr. Lawson vomiting. *Id.* at 39-41. These documents demonstrate that Mr. Lawson experienced physical discomfort, but they do not conclusively link Mr. Lawson's physical symptoms to his ingestion of soy products. Mr. Lawson also submitted medical record test results to support his claims, but he provided no reports of medical providers interpreting the results. ECF No. 129 at 30-39. The Court will not infer evidence that does not exist in the record. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (court will not presume missing facts).

Mr. Lawson has failed to provide evidence demonstrating a connection between his medical records and an inability to safely consume soy products. Regardless of how unpleasant Mr. Lawson's symptoms may be, serving soy to someone who is not allergic to soy "does not amount to a constitutional deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).

The Court finds that Mr. Lawson has not presented sufficient evidence to demonstrate a medical need for a soy-free diet such that Defendants' treatment of his alleged soy allergy violates his statutory or constitutional rights. Considering the facts in the light most favorable to Mr. Lawson, there is no genuine issue of material fact as to Mr. Lawson's alleged allergy to soy products. Accordingly, the Court

grants Defendants' Motions for Summary Judgment and dismisses with prejudice Mr. Lawson's soy allergy claims.

**B. Injunctive Relief Sought as to Kosher Diet**

Mr. Lawson seeks prospective injunctive relief for future suspensions from the kosher diet. ECF No. 8 at 17. The Report and Recommendation found that Mr. Lawson's claim for injunctive relief regarding the kosher diet is moot. *Id.* at 24. Mr. Lawson objects to the Magistrate's finding that his claim for injunctive relief is moot as to receiving a kosher diet at AHCC. *See* ECF No. 127, at 23-24.

In order for the Court to consider his claim for injunctive relief and to preclude summary judgment in favor of Defendants, Mr. Lawson must demonstrate that there is an ongoing "live" controversy. *See Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004) (a case is moot and a court lacks jurisdiction as to a matter if there is no longer a "live" controversy between the parties). Where a live controversy no longer exists because the conduct at issue has been resolved, the plaintiff must make a showing that the conduct is "capable or repetition yet evading review." *See City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983) (noting that this doctrine applies only in exceptional circumstances where the plaintiff can make a reasonable showing that he will be subjected to the alleged illegal conduct in the future).

The parties do not dispute the fact that the DOC restored Mr. Lawson to his kosher diet on June 28, 2015. ECF No. 127 at 9. Mr. Lawson has not demonstrated that he will be subjected to future suspensions of his kosher diet. Because his

deprivation of a kosher diet is not ongoing, the Court finds that Mr. Lawson's claim for injunctive relief as to the suspension of his kosher diet is moot. Accordingly, the Court grants Defendants' Motions for Summary Judgment and dismisses with prejudice Mr. Lawson's claims seeking injunctive relief for the past-suspension of Mr. Lawson's kosher diet.

### C. RUILPA Claim for Damages

Mr. Lawson alleges Defendants violated his rights under RLUIPA by denying him a kosher diet for 77 days and by serving him soy-based products in his kosher diet. ECF No. 8 at 15-16. The Report and Recommendation recommends granting Defendants' motions for summary judgment on the RUILPA claim regarding Mr. Lawson's access to the kosher diet because the Magistrate Judge found that Defendants' denial of Mr. Lawson's kosher diet was, at worst, due to negligence and that negligence is not actionable under RLUIPA. ECF No. 127 at 13-22. The Report and Recommendation also recommends granting Defendants' motions for summary judgment on the RLUIPA claim regarding Mr. Lawson's consumption of soy products. *Id.* Mr. Lawson objects to these recommendations. ECF No. 129, ¶ 6.

RLUIPA, 42 U.S.C. §§ 2000cc to 2000c-5, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

Courts must construe RLUIPA "broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-3(g)).

The Eleventh Amendment bars citizens from bringing lawsuits against states in federal courts. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70 (1989). A state may partially or completely waive its sovereign immunity by consenting to suit pursuant to statute. *See Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (discussing the waiver of sovereign immunity specifically in the context of RLUIPA). A lawsuit brought "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... [and] is no different from a suit against the State itself." *Will,* 491 U.S. at 71. RLUIPA provides a waiver of sovereign immunity to the extent that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

Mr. Lawson sues Defendants, all of whom are state employees, alleging a violation of RLUIPA and seeking equitable relief and monetary damages. ECF No. 8 at 16-19. Defendants respond that summary judgment in favor of Defendants is appropriate on Mr. Lawson's RLUIPA claim because Mr. Lawson may not seek damages against Defendants in their official or individual capacities under RLUIPA and, since Mr. Lawson's kosher diet has been restored to him, injunctive relief is also unavailable. ECF No. 84 at 5.

### 1. *Liability for Officials in Their Official Capacities*

RLUIPA provides that a person may bring suit and obtain appropriate relief against a government. 42 U.S.C. § 2000cc-2(a). However, "a waiver of sovereign immunity to other types of relief does not waive immunity to damages" unless the waiver extends "unambiguously to such monetary claims." *Sossamon v. Texas,* 563 U.S. 277, 285 (2011). In *Sossamon*, the Supreme Court concluded that RUILPA's relief language "is not the unequivocal expression of state consent that [its] precedents require." *Sossamon*, 563 U.S. at 285. Prior to *Sossamon,* the Ninth Circuit concluded that RLUIPA does not authorize monetary damages against defendants in their official capacity. *Holley v. California Dep't of Corr.,* 599 F.3d 1108, 1112 (9th Cir. 2010). Accordingly, the Court finds that Mr. Lawson is not entitled to damages from Defendants in their official capacities under RLUIPA and dismisses with prejudice those claims.

### 2. *Liability for Officials in Their Individual Capacities*

The Ninth Circuit has also held that RLUIPA does not subject prison officials to liability for monetary damages in their individual capacities. *Wood v. Yordy, et al.,* 753 F.3d 899, 901 (9th Cir. 2014). Therefore, the Court finds that Mr. Lawson cannot maintain a RLUIPA claim against Defendants in their individual capacities.

The Court finds Mr. Lawson's RLUIPA claims barred as a matter of law. The Court thus grants Defendants' Motions for Summary Judgment as to Mr. Lawson's RLUIPA claim and dismisses with prejudice all of Mr. Lawson's RLUIPA claims.

**D. First Amendment Free Exercise Claim**

Mr. Lawson also alleges that Defendants violated his civil rights under the First Amendment Free Exercise Clause by preventing him from practicing his Jewish faith by not providing him with a kosher diet. ECF No. 8 at 12-13. The Report and Recommendation recommends granting Defendants' Motions for Summary Judgment. ECF No. 127 at 28. Mr. Lawson objects to this recommendation. ECF No. 129 at 7.

The First Amendment to the United States Constitution provides, in relevant part, that Congress shall make no law prohibiting the free exercise of religion. U.S. Const. Amend. I. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). A prisoner's free exercise rights are not absolute; limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. *Id.* (free-exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security"). A First Amendment free exercise claim may prevail if the plaintiff can show that the defendants acted intentionally to substantially burden his ability to exercise a sincerely held religious belief, *Shakur v. Schriro,* 514 F.3d 878, 884 (9th Cir. 2008), and that this burden is not reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89–91 (1987).

### 1. Substantial Burden

To show that a First Amendment right to free exercise of religion has been violated, a prisoner must demonstrate a substantial burden to a sincerely held belief that is rooted in his or her religion. *Shakur,* 514 F.3d at 884. The parties do not dispute that Mr. Lawson's Jewish faith is sincerely held. *See* ECF No. 127 at 26.

"A burden on the exercise of religion is substantial if it substantially pressures an inmate 'to modify his behavior and violate his [sincerely held religious] beliefs.'" *Babcock v. Clarke*, 373 Fed. Appx. 720, 721 (9th Cir. 2010) (quoting *Shakur*, 514 F.3d at 888). To "substantially burden" the practice of an individual's religion, the interference must be more than an inconvenience. *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir. 1997) (*overruled on other grounds by Penwell v. Holtgeerts*, 386 Fed.Appx. 665 (9th Cir. 2010)) (finding that shackling an inmate on his way to religious services, failing to give 10-15 minutes of notice before religious services, requiring sign-ins for religious services, and subjecting inmates to abusive language were inconveniences that did not rise to the level of "substantial burden"). The interference must also be more than an irregular or short-term occurrence. *Canell v. Lightner,* 143 F.3d 1210, 1215 (9th Cir. 1998) (finding that the sporadic interruptions of prayer the inmate experienced on at most 18 occasions did not constitute a "substantial burden").

Courts have held that temporary interruptions of a prisoner's religious diet do not create a substantial burden when they are very short in duration and when they

are "resolved quickly once the problem was called to the attention of the institution staff." *Boyd v. Lehman*, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006) (finding that serving a Muslim inmate's evening meal before sunset during the first three days of Ramadan was not a substantial burden because the problem was acknowledged and resolved quickly); *see also, e.g.*, *Howard v. Skolnik*, 372 Fed. Appx. 781, 782 (9th Cir. 2010) (affirming summary judgment finding that interference with an inmate's fasting on two occasions did not create a substantial burden on the inmate's religious practice); *Anderson v. Harron*, 2009 WL 2058863, at *5 (D.N.J. July 7, 2009) (finding that an inmate's mistaken and temporary exclusion of 4 to 7 days from a Ramadan meal program did not constitute a substantial burden).

Mr. Lawson alleges that his inability to eat a kosher diet for 77 days created a substantial burden on the exercise of his Jewish faith because he was required to eat the DOC Mainline diet in violation of his religious beliefs. ECF No. 8 at 13. The parties do not dispute that Mr. Lawson did not receive the DOC kosher diet for 77 days between April and June of 2015. Given the Court's ruling regarding Mr. Lawson's First Amendment claim, *infra*, the Court does not find whether or not this suspension is more than a brief inconvenience for a person of Jewish faith.

Mr. Lawson also argues that Defendants did not act quickly to remedy the suspension of Mr. Lawson's kosher diet when they learned of it. *Id.* While he was suspended from the kosher diet, Mr. Lawson filed grievances several times during

April, May, and June of 2015 requesting to be restored to a kosher diet. *See* ECF No. 8-1 at 2, 8 (documenting Mr. Lawson's April and May grievances); *see also* ECF No. 62-10 at 2 (offender complaint dated April 16, 2015, requesting to be restored to the kosher diet); ECF No. 62-10 at 4 (offender complaint dated April 23, 2015, requesting "Please restore my kosher diet regardless of how the kitchen staff intend to address my soy allergy"); ECF No. 62-10 at 7 (corrected copy of Appeal to Level III dated June 9, 2015, and sent to "HQ" on June 16, 2015, seeking "[i]mmediate return to the 'kosher' diet"). The DOC officials notified of and responding to these grievances, including Defendants Murphy and Luce, did not restore Mr. Lawson to the kosher diet until June 28, 2015, over two months after the issue was first brought to their attention. ECF No. 8 at 10; ECF No. 84 at 2.

Given the duration of Mr. Lawson's suspension from the kosher diet and the period of time between the DOC learning of Mr. Lawson's suspension from the kosher diet and restoring Mr. Lawson to it, the 77-day suspension may have created a substantial burden on Mr. Lawson's exercise of religion. However, for Defendants to be subject to liability under the First Amendment, Mr. Lawson must show that Defendants acted intentionally to create this burden on Mr. Lawson's free exercise of religion.

"[I]n the First Amendment free exercise context, negligence on the part of a government official is not enough to show a violation of constitutional rights sufficient to state a claim of relief under § 1983." *Hayes v. Idaho Correctional*

*Center*, 849 F.3d 1204, 1214 (9th Cir. 2017) (*citing Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) and *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006)). The word "prohibiting" in the Free Exercise Clause "suggests a conscious act, rather than mere negligence." *Lewis v. Mitchell*, 416 F.Supp.2d 935, 944 (S.D. Cal. 2005) (internal quotations omitted) ("Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation of his Free Exercise rights.").

Defendants contend that the suspension of Mr. Lawson's kosher diet was a result of negligence not actionable under the First Amendment. ECF No. 41, ¶ 24 (describing Defendants' hypothesis as to how Mr. Lawson may have been removed from the kosher diet). Defendants assert that they were not responsible for removing Mr. Lawson from the DOC kosher diet. ECF No. 84 at 5 (stating that no Defendants possessed "personal knowledge of how the suspension occurred"). Defendants also argue that the suspension of Mr. Lawson's kosher diet was "temporary" and "inadvertent" such that it did not create a substantial burden on Mr. Lawson's exercise of religious belief. ECF No. 84 at 5.

Mr. Lawson argues that his suspension from the kosher diet was not inadvertent on the part of Defendants. ECF No. 8 at 13. Mr. Lawson alleges that one or more of Defendants intentionally removed him from the DOC kosher diet, but he has not provided any evidence to support this allegation. *See id.*

Mr. Lawson also alleges that Defendants refused to reinstate Mr. Lawson's kosher diet "without valid reason or justification." ECF No. 8 at 13. In support of

this argument, Mr. Lawson provides evidence that he attempted to bring the suspension of his kosher diet to the attention of DOC officials several times during the 77-day suspension period. *See* ECF Nos. 8-1 & 62-10 (offender complaints and grievances filed). The exhibits presented by Mr. Lawson show that the DOC officials responding to these grievances were not Defendants, although Defendants Murphy and Luce were consulted at least once. *See id.* These exhibits and Mr. Lawson's assertions that Defendants refused to reinstate his kosher diet represent Mr. Lawson's evidence in support of his claim that Defendants continued to intentionally deprive him of the DOC kosher diet. However, Defendants Carney, Luce, and Knie were not directly involved in responding to the complaints that Mr. Lawson presented to the Court as exhibits, and Mr. Lawson's exhibits show that Defendant Murphy was responsible for the investigation of one grievance filed by Mr. Lawson at AHCC. *See* ECF No. 8-1 at 8. Furthermore, Mr. Lawson has not provided any evidence to support his contention that the named Defendants acted intentionally or with deliberate indifference.

Considering the foregoing facts in the light most favorable to Mr. Lawson, the Court finds that Mr. Lawson has not provided sufficient evidence to raise a genuine issue of material fact that Defendants acted intentionally in creating a substantial burden on Mr. Lawson by depriving Mr. Lawson of the kosher diet for 77 days.

/ / /

/ / /

### 2. *Valid Penological Interests*

Even when a substantial burden on a prisoner's free exercise of religion has been created, there may still be no violation of the First Amendment if Defendants' conduct was reasonably related to a valid penological interest. When a regulation by prison officials impinges on an inmate's constitutional rights, the regulation still will be deemed valid if it is reasonably related to legitimate penological interests. *Turner,* 482 U.S. at 89–91. To determine whether a regulation or policy is reasonably related to a legitimate penological interest, the Court must consider: (1) if there exists a valid, rational connection between the action and the legitimate governmental interest put forth to justify it; (2) whether alternative means of exercising the regulated right remain open to the inmate; (3) the impact that an accommodation of the asserted constitutional right will have upon guards, other inmates, and prison resources; and (4) whether ready alternatives exist that fully meet the inmate's demands at a *de minimis* cost to valid penological interests. *Id.*

Prisons must manage the diets of all of the inmates they supervise, and the Washington Department of Corrections has established policies for managing these diets. Prisons offer religious diets, provided inmates follow the proper procedures for initiating a religious diet. *See* ECF No. 43-2 at 7. When a prisoner expresses an inability to eat a particular food and no therapeutic diet addresses that complaint, the DOC diet policies provide that the inmate shall self-monitor his or her food intake

on the Mainline diet. Currently, there is no alternative for this kind of self-monitoring under one of the religious or other therapeutic diets.

Mr. Lawson followed the proper procedure upon his intake at AHCC, entitling him to the religious kosher diet. He later requested a therapeutic soy-free diet that, when implemented, removed him from the kosher diet. Following Passover, pursuant to Mr. Lawson's expressed inability to eat soy products and to DOC policy for self-monitoring expressed inabilities to eat certain foods, Mr. Lawson received the Mainline diet rather than the kosher diet. Defendant DOC officials were following these DOC policies, which have the legitimate penological interest of ensuring that all inmates receive sufficient nutrition, when Mr. Lawson expressed his inability to eat soy products.

The Court finds that Defendants acted in accordance with DOC policy, which is related to valid penological interests, and that the potentially substantial burden placed upon Mr. Lawson's free exercise of religion was, at most, the result of Defendants' negligence. Accordingly, the Court grants Defendants Carney, Luce, Murphy, and Knie's Motion for Summary Judgment and dismisses with prejudice Mr. Lawson's First Amendment Free Exercise claim.

The Court finds that Defendant Sabatino was not employed at AHCC at the time of the 77-day suspension. ECF No. 87 at 2. Therefore, the Court grants Defendant Sabatino's Motion for Summary Judgment and dismisses with prejudice Mr. Lawson's First Amendment Free Exercise claim against Defendant Sabatino.

**E. Eighth Amendment Inadequate Provision of Food Claim**

Mr. Lawson alleges Defendants violated his Eighth Amendment right to food nutritionally sufficient to maintain good health by serving him food that contains soy ingredients. ECF No. 8 at 13-14. The Report and Recommendation recommends that Defendants' Motions for Summary Judgment as to Mr. Lawson's Eighth Amendment claim be granted. ECF No. 127 at 34. Mr. Lawson objects to this recommendation. ECF No. 129 at 7.

To prevail in an Eighth Amendment claim, a plaintiff must satisfy two elements. First, "the plaintiff must make an 'objective' showing that the deprivation [at issue] was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (internal citations omitted). Second, the plaintiff must make a subjective showing that the defendant prison officials showed "deliberate indifference to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).

As stated above, Mr. Lawson has not presented a genuine issue of material fact as to his alleged soy allergy. *See supra* Part III. A. Because there is no conclusive evidence linking Mr. Lawson's alleged soy allergy to his symptoms, his arguments that Defendants' giving him soy products have caused him any injury must fail. Likewise, because there is no evidence that Mr. Lawson has a soy allergy, Defendants did not show deliberate indifference to Mr. Lawson's health when they refused to provide him a soy-free diet. Without a showing that his physical

symptoms are directly related to an allergy to soy, Mr. Lawson has not satisfied the first or second requirements of a successful Eighth Amendment claim.

Accordingly, the Court grants Defendants' Motions for Summary Judgment and dismiss with prejudice Mr. Lawson's Eighth Amendment claim.

**F. Fourteenth Amendment Due Process and Equal Protection Claims**

Mr. Lawson alleges that Defendants violated his Fourteenth Amendment rights to due process and equal protection of the law because Defendants removed him from the DOC kosher diet without process and "refused to reinstate him without cause." ECF No. 8 at 14-15. The Report and Recommendation recommended granting Defendants' Motions for Summary Judgment as to Mr. Lawson's Fourteenth Amendment claims. ECF No. 127 at 37-38. Mr. Lawson objects to this recommendation. ECF No. 129 at 7.

*1. Due Process Claims*

Two possible claims arise under the Due Process Clause of the Fourteenth Amendment: a challenge to substantive due process and a challenge to procedural due process. *See Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 200 n.8 (1989) (noting that "the protections of the Due Process Clause, both substantive and procedural, may be triggered" in some circumstances). First, Mr. Lawson alleges that Defendants violated his right to substantive due process by removing him from the kosher diet and refusing to reinstate it without cause. ECF No. 8 at 14-15. "The Fourteenth Amendment's substantive due process

ADOPTING REPORT AND RECOMMENDATION ~ 25

requirements, however, are preempted when 'a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior.'" *Paul v. City of Sunnyside*, 2009 U.S. Dist. LEXIS 96622, *13 (E.D. Wash. Oct. 16, 2009) (*quoting Albright v. Oliver*, 510 U.S. 266, 273-74 (1994)). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

The First Amendment Free Exercise Clause provides the constitutional protections that Mr. Lawson seeks in his Fourteenth Amendment substantive due process claim. *See* ECF No. 8 at 12-13. The Court previously has determined that the First Amendment claim shall be dismissed with prejudice. Therefore, the Court grants Defendants' Motions for Summary Judgment and dismisses with prejudice Mr. Lawson's Fourteenth Amendment substantive Due Process claim.

Second, Mr. Lawson argues that Defendants had a procedural duty to provide him a hearing before discontinuing his kosher and/or therapeutic diet. *Id.* at 15. Mr. Lawson does not provide any evidence that hearings are required under prison policy to support this claim, and the Court will not infer evidence that does not exist in the record. *See Lujan*, 497 U.S. at 888-89. Considering the facts in the light most favorable to Mr. Lawson, the Court finds that there is no established right for a

hearing prior to discontinuing his kosher or therapeutic diets.  Therefore, the Court

grants Defendants' Motions for Summary Judgment and dismisses with prejudice

Mr. Lawson's Fourteenth Amendment procedural Due Process claim.

### 2. *Equal Protection Claim*

Mr. Lawson alleges without support that Defendants violated his right to equal

protection by "treating him differently from other inmates on kosher and medically

required diets."  ECF No. 8 at 15.

Equal protection issues arise when similarly situation individuals are treated

differently without a rational relationship to a legitimate state purpose.  *San Antonio*

*School District v. Rodriguez*, 411 U.S. 1 (1972).  To succeed in a § 1983 claim

alleging a violation of the Equal Protection Clause of the Fourteenth Amendment, a

plaintiff must show that the defendants "intentionally, and without rational basis,

treated him differently from others similarly situation."  *N. Pacifica LLC v. City of*

*Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Mr. Lawson asserts Defendants treated him differently from other inmates

who received religious diets, but he offers nothing to substantiate this claim other

than his own conclusory statements.  *See Village of Arlington Heights v.*

*Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977) (finding that

conclusory allegations by themselves do not establish an equal protection violation

without proof of invidious discriminatory intent).  Even if Mr. Lawson was able to

offer proof that he was treated differently from other inmates receiving religious

diets, he has not provided evidence that he was treated differently from other inmates receiving religious diets who alleged that they were allergic to soy products. Nor does Mr. Lawson offer evidence that Defendants acted in a discriminatory manner when they deprived him of the kosher diet.

Considering the foregoing facts in the light most favorable to Mr. Lawson, the Court finds no genuine issue of material fact and thus grants Defendants' Motions for Summary Judgment and dismisses with prejudice Mr. Lawson's Fourteenth Amendment Equal Protection claim.

### G. Qualified Immunity

Defendants Carney, Luce, Murphy, and Knie contend that they are entitled to qualified immunity from Mr. Lawson's claims for damages. ECF No. 84 at 12. The Magistrate Judge in the Report and Recommendation found that Defendants did not violate Mr. Lawson's constitutional rights and did not address the issue of qualified immunity. ECF No. 127 at 39. The Court, having found no genuine issue of material fact as to Mr. Lawson's claims, reserves ruling on the question of whether Defendants Carney, Luce, Murphy, and Knie would be entitled to qualified immunity.

/ / /

/ / /

/ / /

/ / /

## IV.  Other Objections

### A. Plaintiff's Argument that Discovery Issues Should Prevent Summary Judgment

Mr. Lawson raised several discovery issues in support of his objections to granting Defendants' summary judgment motions.  ECF No. 119 at 4-5.  The Report and Recommendation found that deciding Defendants' summary judgment motions was proper because Mr. Lawson failed to articulate the discoverable facts he sought and how such facts would create a genuine issue of material fact.  ECF No. 127 at 40-48.

The Report and Recommendation presents a thorough analysis of the discovery issues.  *See* ECF No. 127 at 40-48.  The Court notes that Mr. Lawson was given renewed opportunities to conduct any discovery.  After reviewing the Magistrate Judge's arguments and analysis, the Court agrees with the Magistrate Judge and the Court adopts the findings in the Report and Recommendation.

### B. Magistrate Judge's Denial of a Preliminary Injunction

The Magistrate Judge denied Lawson's motions for preliminary injunctions on three occasions prior to the Report and Recommendation.  *See* ECF No. 114 (December 8, 2016 order denying injunctive relief); ECF 79 (May 11, 2016 order denying injunctive relief); ECF No. 26 (November 12, 2015 order denying injunctive relief).  In his objections to the Report and Recommendations, Mr.

Lawson objects regarding the Magistrate Judge's authority to deny a preliminary injunction. ECF No. 129 at 5.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court may reconsider a pretrial matter when "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Section 636(b)(1)(A) reserves authority to hear and determine motions for injunctive relief to a judge of the court.

Mr. Lawson did not timely object to the Magistrate Judge's June 23, 2016 Order denying Mr. Lawson's Motion for Preliminary Injunction, ECF No. 83, but he did timely object to the December 8, 2016 Order citing 28 U.S.C. § 636(b)(1)(A). *See* ECF No. 118. However, because the Court denies Mr. Lawson's request for injunctive relief as to soy products and finds that Mr. Lawson's request for injunctive relief as to the kosher diet is moot, the Court also finds that Mr. Lawson's objections to the Magistrate Judge's denial of Mr. Lawson's motions for injunctive relief moot.

**V. Introduction of Additional Facts**

Mr. Lawson raises new facts in his objections to the Report and Recommendation. ECF No. 129 at 3-4. He alleges that he has been exposed to water containing high levels of perfluoroalkyl substances and perfluorooctanoic acid since his arrival at AHCC and that his consumption of this water has resulted in abnormal liver and cholesterol levels. *Id.*

A court reviewing a magistrate judge's report and recommendation has discretion in deciding whether to consider new evidence. *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000). The Court finds that the new evidence introduced by Mr. Lawson in his objections to the Report and Recommendation is not relevant to Mr. Lawson's claims in this case. Accordingly, the Court will not consider the newly introduced evidence regarding the AHCC water or Mr. Lawson's alleged resulting physical conditions.

**VI. Three-Strike Provision**

Defendants ask this Court to find Mr. Lawson's complaint frivolous under the Prison Litigation Reform Act (PLRA) and to count it as one of the three "strikes" against his *in forma pauperis* status. ECF No. 84 at 10-20. The Report and Recommendation denies Defendants' request and finds that this suit will not count as one of the three "strikes" against Mr. Lawson's *in forma pauperis* status. ECF No. 127 at 48-49. Mr. Lawson has no objection to this finding, and the Court adopts this finding regarding the PLRA.

The Court adopts the remainder of the Report and Recommendation, and, having considered them, denies Mr. Lawson's remaining objections.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Report and Recommendation, **ECF No. 127**, is **ADOPTED IN ITS ENTIRETY**.

2. Defendants' Motion for Summary Judgment, **ECF No. 84**, is **GRANTED.**

3. Defendant Sabatino's Motion for Summary Judgment, **ECF No. 87**, is **GRANTED**.

4. All of Plaintiff's claims are dismissed with prejudice.

5. Judgment shall be entered for Defendants.

The District Court Clerk is hereby directed to enter this Order, enter Judgment as noted above, provide copies to Plaintiff and defense counsel, and **close this case.**

**DATED** September 28, 2017.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge